No. 3826

Second Circuit

———

.THOMAS v. WEIL BROTHERS

———

(June 2, 1930. Opinion and Decree.)

———

F. B. Cappel, of Alexandria, attorney for plaintiff, appellant.

White, Holloman & White and R. C. Bauer, of Alexandria, attorneys for defendant, appellee.

ODOM, J. Plaintiff is a colored man, sixty-six years old, and was a common laborer on the plantation of defendant. While doing some work in connection with the building of a small garage for defendant's manager, plaintiff fell and broke his leg. He brings this suit against defendant for damages under article 2315 of the Civil Code, which provides:

"Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it. * * *"

And article 2317 of the Civil Code, which provides that:

"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable. * * *"

Plaintiff has appealed from a judgment rejecting his demands. The facts are as follows:

A man named Melady was employed by defendant as manager of its plantation. Melady employed a colored man, named Agullard, to construct a small, cheap garage for his own use and benefit. The defendant did not authorize the building of the garage and knew nothing about Melady's intention to do so. But counsel for plaintiff contends that, inasmuch as the structure was being erected on defendant's property, defendant is responsible.

Under the facts as disclosed, we do not find it necessary to pass upon the point raised, because it is perfectly clear that the injury which plaintiff sustained was not due to the fault or negligence of Melady, the plantation manager, or Agullard, who was employed to do the work.

On the day that plaintiff was injured, he was cutting weeds in the front yard of the premises where the garage was being built. Melady told Agullard that in case he needed any help to call plaintiff. Agullard, it seems, was doing the work unassisted, and, according to plaintiff's testimony, Agullard called him and told him to help him nail on some sheeting. Plaintiff says that, in order to do the nailing, it was necessary for him to stand on something,

and gives the following account of how he fell: he says that Agullard said to him:

" 'Now, Thomas, you get down and hand me up the roof,' and in turning to get down the box on which he told me to stand turned and threw me off and broke my leg."

Again, he said:

"When the carpenter told me to get down and hand him up the roof, I turned to get down and this foot turned and the box, and I went down and broke my leg."

The plaintiff testified that the box was 2½ by 2½ feet, and that it was strong enough to hold up his weight, and that he had been using the box and had gotten down from it on two previous occasions. The theory on which it is contended that defendant is liable is that, through his agent, he furnished plaintiff with an unsafe appliance with which to work without pointing out to him the danger. According to plaintiff's own testimony, the box was sound and not unsafe, and that plaintiff himself procured the box on which to stand, although he says that he was told by Agullard to get it and use it. It is further apparent that plaintiff's fall was not due to the fact that the box turned, but due to the fact that his foot turned. He says:

"I turned to get down and this foot turned and the box turned and I went down and broke my leg."

Agullard swore positively that he did not tell or suggest to plaintiff that he stand on the box, but, on the contrary, merely told him to hand him some pieces of tin, and at the same time cautioned him not to climb, as he thought plaintiff was too old to get off the ground. He says that the walls of the garage were not more than 8 feet high, and that the pieces of tin sheeting which he told plaintiff to hand him were 8 or 10 feet long, and that there was no occasion whatsoever for plaintiff to use the box. As to the condition of the box, Agullard testified that he himself had been using it to stand on while doing some nailing, and that the box was sound and not likely to turn over, if properly placed on the ground. The testimony shows that the box was 2½ by 2½ feet, and we can see no reason why it should have turned over, unless carelessly placed. There was nothing dangerous about the use of the box. If it was so placed on the ground as to turn over, that was plaintiff's fault.

Counsel for plaintiff cited several cases, including Porter vs. Rogers Oil & Gas Co., 139 La. 1050, 72 So. 732, holding that, if "an employer assigns a common laborer to a particular work, at a particular place, and with appliances furnished by him, he is bound to foresee the possibility of an accident which may result from the character of the work and of the appliances so furnished, and the employee has the right to engage in the work with the assurance that the employer will so do, and will protect him, accordingly, against dangers which are not obvious and of which he is not sufficiently warned, either by his employer or by his own experience."

The cases cited are distinguishable from the case at bar. In the case at bar, there was no danger from the use of the box, except the danger of its turning over, which was necessarily obvious to plaintiff, who himself procured the box and placed it on the ground. Even if it be conceded that Agullard told plaintiff to get the box and use it, there was no necessity for him to warn plaintiff that he should be careful in putting the box down so that it would not turn over. The fact that the box would turn over if carelessly set on the ground

was one as well known and obvious to plaintiff as to any one else. But, aside from this, as already stated, the plaintiff says that his foot turned, and it appears that he began to fall on that account.

The judgment appealed from rejecting plaintiff's demands is correct and is accordingly affirmed, with all costs.